BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
LESLIE E. HURST (178432)
THOMAS J. O'REARDON II (247952)
701 B Street, Suite 1700
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com
toreardon@bholaw.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE BROWN, on Behalf of Herself and All Others Similarly Situated, | Case No: **'17CV0659 JAH BLM** |
| | CLASS ACTION |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | CLASS ACTION COMPLAINT FOR: |
| DYNAMIC PET PRODUCTS, LLC and FRICK'S MEAT PRODUCTS, INC., | 1. VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT, MISSOURI REVISED STATUTE §§407.101, *et seq.*; |
| Defendants. | 2. FRAUD; and |
| | 3. NEGLIGENT MISREPRESENTATION |
| | DEMAND FOR JURY TRIAL |

Case No.

00119034

Plaintiff Stephanie Brown, by and through her attorneys, brings this action on behalf of herself and all others similarly situated against Defendants Dynamic Pet Products, LLC ("Dynamic") and Frick's Meat Products, Inc. ("Frick's"), and states:

## NATURE OF THE ACTION

1.     This is a consumer protection class action arising out of misrepresentations and omissions made by Defendants Dynamic Pet Products, LLC and Frick's Meat Products, Inc. regarding the Real Ham Bone For Dogs. Frick's is a meat product manufacturer.  In an effort to profit from the waste produced by slaughterhouses and meat manufacturers, Frick's or its principals created Dynamic to sell waste ham bones to pet owners.  Through Dynamic, a wholly owned subsidiary of Frick's, Defendants manufacture, market, and sell the Real Ham Bone For Dogs as an appropriate and safe chew toy for dogs. Indeed, on each product label and as the name suggests, Defendants explicitly market the Dynamic Real Ham Bone For Dogs as a chew toy *for dogs*.

2.     The Real Ham Bone For Dogs is not a safe or appropriate chew toy for dogs and is not fit for its intended purpose, despite Defendants' contrary representations.  The Real Ham Bone For Dogs is an 8" hickory-smoked pig femur, which when chewed is prone to splintering into shards.  When swallowed, these shards slice through dogs' digestive systems and cause severe internal injuries.  Thousands of dogs have suffered a terrible array of illnesses, including stomach, intestinal, and rectal bleeding, vomiting, diarrhea, constipation, and seizures, and have died gruesome, bloody deaths as a result of chewing Defendants' Real Ham Bone For Dogs.

3.     Defendants have known as early as 2006 that the Real Ham Bone For Dogs is not safe or appropriate for dogs.  Over the past nine years, consumers have complained directly to Defendants about the horrific injuries and agony that their pets have endured as a result of the Real Ham Bone For Dogs,

BLOOD HURST & O'REARDON, LLP

00119034

1    all of which Defendants casually ignored.

2        4.    In response to public outcry, in 2010, the Missouri Better Business

3    Bureau alerted Defendants about the increasing number of complaints it was

4    receiving.  Also in 2010, similarly responding to customer complaints, the Food

5    and Drug Administration issued a notice that bones such as the Real Ham Bone

6    For Dogs are not suitable for dogs.  The Federal Drug Administration ("FDA")

7    found that "bones are unsafe for your dog" and that giving bones to dogs is a

8    "dangerous practice and can cause serious injury."  These injuries, the FDA

9    noted, include pieces of bone becoming lodged in the dog's esophagus,

10   windpipe, stomach, or intestines, constipation, severe bleeding from the rectum,

11   and deadly bacterial infections.

12       5.    Despite knowing that the Real Ham Bone For Dogs is dangerous

13   and not appropriate for dogs, Defendants expressly and impliedly represented

14   and continue to represent on the product label and on Dynamic's website and

15   other marketing that the Real Ham Bone For Dogs is "safe for your pet" and is

16   "meant to be chewed."  It has failed to inform consumers of the known dangers

17   and that the Real Ham Bone For Dogs is not safe and that when used as directed

18   may cause injury or death.  As a result of Defendants' misrepresentations and

19   omissions, Plaintiff and the proposed Class purchased a product that is other than

20   that which they thought they were purchasing and one that is not fit for its

21   intended purpose—to be chewed by dogs.

22       6.    Plaintiff brings this action on behalf of herself and other consumers

23   who have purchased the Real Ham Bone For Dogs.  Plaintiff seeks monetary

24   redress for all consumers who purchased the deceptively advertised Dynamic

25   Real Ham Bone For Dogs.

26   ///

27   ///

28   ///

BLOOD HURST & O'REARDON, LLP

**JURISDICTION AND VENUE**

7.    This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, is a class action in which there are in excess of 100 class members, and many members of the class are citizens of a state different from Defendants.

8.    This Court has personal jurisdiction over Defendants because Dynamic and Frick's are authorized to conduct business and do conduct business in California.  Defendants marketed, promoted, distributed, and sold the Real Ham Bone For Dogs in California, and continue to do so, and have sufficient minimum contacts with this State and/or have sufficiently availed themselves of the markets in this State through their promotion, sales, distribution, and marketing, to render the exercise of jurisdiction by this Court permissible.

9.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) and (b) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district where Defendants advertise and sell the Real Ham Bone For Dogs.  Venue is also proper under 18 U.S.C. §1965(a) because Defendants transact substantial business in this District.

**PARTIES**

10.    Plaintiff Stephanie Brown resides in Londell, Missouri.  On or about December 24, 2014, Plaintiff Brown purchased the Dynamic Real Ham Bone For Dogs from Walmart in Washington, Missouri.

11.    Defendant Frick's Meat Products, Inc. is a Missouri Corporation with its headquarters at 360 M E Frick Drive, Washington, Missouri 63090-1050.  Frick's Meat Products, Inc. is a major meat product manufacturer and supplies sausages and other prepared meats to food retailers nationwide.  To profit from the waste bones resulting from the manufacture of meat products and slaughterhouse waste, Frick's or its principals created Dynamic Pet Products,

BLOOD HURST & O'REARDON, LLP

LLC and knowingly and intentionally supplies Dynamic with bones for the purpose of selling them as the Real Ham Bone For Dogs.

12.   Defendant Dynamic Pet Products, LLC is a Missouri Corporation with its headquarters located at the same location as Frick's, 360 M E Frick Drive, Washington, Missouri 63090-1050.   Dynamic is in the business of manufacturing and selling chew toys for dogs and holds itself out to the public as a manufacturer of safe, high-quality pet products.   Dynamic has sold the Real Ham Bone For Dogs since 2001.   The Real Ham Bone For Dogs is Dynamic's "number one seller."   With Frick's, Dynamic has marketed, distributed, and sold the Real Ham Bone For Dogs to many thousands of consumers in the United States through nationwide retailers such as Walmart, Sam's Club, H.E.B., and Dollar General.   Dynamic also sells the Real Ham Bone For Dogs directly to consumers nationwide through direct sales websites such as www.walmart.com and www.heb.com, and its own website, www.dynamicpet.net.   Dynamic's website is a virtual store where consumers can view descriptions and pictures of the products, make purchases and have items shipped directly to them.   On its website, Dynamic charges consumers $36.00 for a case of 12 Real Ham Bone For Dogs, or $72.00 for a case of 24.

13.   Dynamic and Frick's are the alter egos of one another and operate as a single business enterprise for the production, marketing, and sale of the Real Ham Bone For Dogs.   Dynamic and Frick's share the same ownership, management, and headquarters.   The Real Ham Bone For Dogs is manufactured and packaged in Frick's packaging facility, under the supervision and at the direction of David Frick (also an owner of Frick's Meat Products), who also determines Dynamic's plan of operations, makes hiring decisions, and directs employees in the manufacture and packaging process.   In packaging the Real Ham Bone For Dogs, Dynamic shares with Frick's the packaging lines used by Frick's for its meat products.   The Frick's family member who directs marketing

for Frick's also directs marketing for Dynamic. Retailers direct purchasers with complaints about the Real Ham Bone For Dogs to Frick's as the product supplier. Frick's and Dynamic work in concert with each other to profit from the sale of waste ham bones by marketing them to pet owners as safe and appropriate chew toys for dogs, when they are not.

## FACTUAL ALLEGATIONS

14. To profit from the waste resulting from the manufacture of meat products, Frick's, or its principals, created Dynamic to sell waste pig bones to pet owners, marketing them as appropriate and safe for dogs. Through Dynamic, Defendants manufacture, market, and sell the Real Ham Bone For Dogs as a chew toy for dogs. The Real Ham Bone is an 8" pig femur which is brined and then smoked and baked in an oven for approximately ten hours at between 130 and 150 degrees centigrade. Ten hours of smoking and baking dries out the bone, gives the bone a rich smoky color, and gives it a long shelf life—up to one year. It also increases the bone's brittleness.

15. On each label, Defendants state that the Real Ham Bone For Dogs is "meant to be chewed" and is "for dogs." In reality, the Real Ham Bone For Dogs is not appropriate for dogs and is not safe for its intended purpose, despite Defendants' contrary representations. When chewed, the Real Ham Bone For Dogs is prone to splintering into shards and braking into small pieces. When swallowed, these shards slice through dogs' digestive systems and cause severe internal injuries. Thousands of dogs have suffered a terrible array of illnesses, including stomach, intestinal and rectal bleeding, vomiting, diarrhea, constipation, and seizures, and have died gruesome, bloody deaths as a result of chewing Defendants' Real Ham Bone For Dogs.

16. As a result of Defendants' omissions and misrepresentations, Plaintiff and the Class members purchased an inherently unsafe and dangerous product that is other than as advertised and has caused many Class members,

BLOOD HURST & O'REARDON, LLP

5

Case No.

including Plaintiff, to incur costly veterinarian bills and, tragically, to lose their pets.

17.   On or about December 24, 2014, Plaintiff Brown purchased the Dynamic Real Ham Bone For Dogs from Walmart in Washington, Missouri. Plaintiff found the product in the pet toy and treat aisle, the area of the store in which Defendants intended the product to be sold.  She purchased two of the bones, one for each of her dogs, as Christmas treats.   Prior to making the purchase, Ms. Brown read the label for the Real Ham Bone For Dogs.  The label stated expressly and impliedly that the Real Ham Bone For Dogs was meant for dogs and was safe for dogs to chew on.  The label omitted material information about the safety of the Real Ham Bone For Dogs, including that it was not appropriate for dogs and that dogs who chew on it are subject to serious health risks, including death.  In reliance on the express and implied representations, unaware of the material omitted facts, and based on her reasonable expectation that it was safe for her dogs, Plaintiff purchased the Real Ham Bone For Dogs.

18.   On Christmas Day, Ms. Brown gave a Real Ham Bone For Dogs to each of her pit bulls: one to Harley and one to Kya.  Plaintiff watched her dogs chew on the Real Ham Bone For Dogs for approximately an hour after which she took the bones away because she noticed they were starting to splinter.  That evening, both of her dogs became ill.  They were vomiting, had blood in their mouths and in the vomit, and in Harley's vomit, she also saw bone shards. Plaintiff Brown called her veterinarian who recommended she bring the dogs in immediately, which she did.  A veterinarian treated both dogs on an emergency basis, and fortunately both dogs survived and recovered.  Had Plaintiff known the truth about the Real Ham Bone For Dogs, Plaintiff would not have purchased the product and would not have given it to her dogs.  As a direct result of Defendants' conduct as described herein, Plaintiff purchased an unsafe product that she reasonably believed to be safe and suffered injury in fact and lost money

BLOOD HURST & O'REARDON, LLP

00119034

and property.

19.    Plaintiff's experience is common, and Defendants have known (or should have known) for many years that the Real Ham Bone For Dogs posed an unreasonable risk of harm to dogs.  Since 2006, consumers have complained to Dynamic directly and posted complaints to online forums after their pets became ill or died after chewing on the Real Ham Bone For Dogs.  The complaints evince a common and continuing danger, of which Defendants are fully aware, and that Defendants have failed to warn consumers about.

- On August 4, 2015, a dog owner reported: "I recently purchased this Ham dog bone from Walmart on a Monday and my dog got really sick on Tuesday.  Really bad vomiting and diarrhea.  He could not keep water down and I thought he just had an upset stomach.  I found him dead the next day under our kid's bed.  He was the healthiest dog I have ever seen.  When I moved him he started bleeding from the mouth.  After reading all the other cases on this website I would have never bought this product.  I highly recommend that Walmart remove this and that no one ever purchases this product."

- On March 22, 2015, another dog owner reported: "I bought this horrible bone at caputo's [sic] market . . . over the weekend and now my poor dog Diva is suffering cause of this bone.  I discovered her in shock and couldn't move.  She puked and had Diarrhea and couldn't stand up.  So we rushed her to the vet. She has spent 3 days in the hospital on iv's, pain meds, antibiotics and had a fever trying to pass this deadly bone.  A week later we had to bring her back and now waiting to see how she improves.  So far vet bills are over $2400."

- On March 21, 2015, another dog owner reported: "We had bought a Dynamic Pet Real Ham bone at Walmart the other day.  The next day he went outside to go to the bathroom and I heard a scream like he was being killed.  I ran to go see what was wrong, my poor dog was so bound up with the bone his poop was stuck and he could not pass it.  That was 3 days ago.  He is still not better he is having a hard time going to the bathroom and vomiting."

- On March 11, 2015, another dog owner reported: "On February 21, 2015 I bought a dynamic ham bone for my dog, Checkers.  I gave it to him.  Within 8 hrs he was throwing up, panting, pacing, and having diarrhea.  I rushed him to the vet they xrayed him and found bone splinters in his

Case No.

00119034

stomach. He needed IV therapy for a couple of days, powerful pain medication, and antibiotics and be on a special diet. I knew cooked bones aren't good for dogs but I thought if they sell it in the pet section that it must be safe. It won't splinter. Well I was wrong."

- On March 8, 2015, another dog owner reported: "My fiancé bought this real ham bone for our 9 month puppy to occupy her time on Friday March 6, 2015. On Saturday, March 7 at 3 AM, I woke up to see my puppy in her own urine in her crate (she has never made a mess in her crate). That Saturday afternoon, she could not make it outside to poop and ended up pooping on the floor in the house and I immediately took her outside where she had Diarrhea. It is now Sunday and she has had diarrhea and vomiting and has done it all over the house. I have been up all night taking care of my puppy."

- On October 27, 2014, another dog owner reported: "On Friday October 24, 2014, I purchased a Dynamic Femur Bone for my dog. Although I joyfully watched her enjoy the product, it was not less than 6 hours later that my dog became sick. She started vomiting throughout Friday night and all day Saturday. On Saturday night she suffered her first seizure. Saturday night she was also blessed to have bloody stools. On Sunday another seizure."

- On June 18, 2013, another dog owner reported: "My son brought home 3 of these bones, one for each dog. The two black labs ended up throwing them up, lots of bone fragments. However, our 5 year old golden retriever was not as lucky. They messed up her whole insides. After losing about 3 gallons of blood through the rectum and a $400 vet bill . . . ."

- On April 1, 2013, another dog owner reported: "I bought this ham bone from Dollar General yesterday and gave it to my American bulldog (which is in a very good health). An hour later, he was vomiting pieces of the bone. That was all in his vomit. So the next morning, we went to check on him and he was laid over on his side - foaming, having convulsions, urinating on himself. He vomited on his bed and all over the ground in the garage and his eyes were opened in agony. We took him to the vet emergency hospital where he is there now and might not make it. We have to pay $564 . . . ."

- On February 1, 2012, another dog owner reported: "I recently purchased a Dynamic Ham Bone from the local Dollar General store for $3.00. I gave it to my dog Sunday night 1/29 and by the following morning, he was in pain. He was dripping blood from his bottom and constipated. I carried him to the vet and she tried to dislodge the bones. She did get them out

BLOOD HURST & O'REARDON, LLP

00119034

but it was too late.  My beloved pet was in such distress.  She kept him overnight on an IV and some type hotplate to try and bring his temperature back up but he didn't pull through."

- On January 24, 2012, another dog owner reported: "On December 6, 2011, we gave our beloved Sadie a Dynamic Ham Bone.  By morning she was very ill.  By 6:30 pm, we were told by our vet that she died!  Hours before she was running around playing, so excited that we got her a treat.  Little did I know it would be her last!"

- On Dec. 28, 2011, another dog owner reported: "My dogs almost died after having the 'real ham bone' from Dynamic Pet out of Washington, MO.  We gave them a bone for a Christmas present we purchased from Dollar General.  My male Italian greyhound ended up on the emergency vets office on Christmas day.  They said he almost didn't make it.  The x-rays revealed a blockage and splinters from the bone.  I even sat with my dogs while they chewed on their bones and I did not see a splinter or I would have taken it away immediately.  After two days of hospitalization, he came home but is still not acting like before he went in.  He vomited and had bloody diarrhea from these."

- On December 22, 2010, another dog owner reported: "We bought a couple of their ham bone treats for the dogs on Saturday, December 11.  By Monday, December 13, my 4 year old chocolate labrador was dead and my 6 year old rottweiler was ill and in the hospital.  We have all the information and facts from the Veterinarian.  My $1500.00 labrador and great friend is dead and $1400.00 spent on veterinary bills for the rottweiler."

- On July 9, 2010, another dog owner reported: "On July 6 2010 I purchased a Dynamic Pet ham bone.  On July 7th I found my dog, Jake (Pit Bull Terrier), dead in a pool of blood the next morning.  I had no idea this bone was the case until my other dog was throwing up chards of bone."

- On March 6, 2009, another dog owner reported: "I bought a Real Ham Bone made by Dynamic Pet Products of Missouri from Walmart . . . . Trace, my dog, enjoyed chewing on this bone.  It did not splinter or anything, in fact there is quite a large piece of it still left.  Then in the evening she started vomiting.  She spent the next day at a veterinarian's office where she was diagnosed with a blockage of the colon.  That night she endured a 4 hour surgery at Brandon Veterinary Specialists where the vet picked out small round pellets of the bone, up to the size of about a b-b.  The next morning she was moved to Florida Veterinary Specialist critical care unit.  Again in the evening she had another 2 hour surgery,

BLOOD HURST & O'REARDON, LLP

00119034

because the blockage had caused poison in her body.  She passed away at 4:30 the next afternoon . . . . My vet bills were $14,000."

- On August 15, 2006, another dog owner reported: "Packaged dog ham bone lodged in my dogs intestines from inside his stomach [*sic*] to the length of his intestines.  Chewed bone particles cemented together and prevented dog from excreting waste.  Dog was vomiting and unable excrete waste though he tried.  Two times in emergergency [*sic*] room for xrays & emimas [*sic*]."

20.    In 2010, the FDA issued a statement against giving bones to dogs as chew toys.  The FDA found that bones are unsafe no matter what their size.  "Giving your dog a bone may make your pet a candidate for a trip to your veterinarian's office later, possible emergency surgery, or even death."  According to the 2010 FDA statement, the risks associated with giving bones to dogs include bone or splinters of bone becoming lodged in the esophagus or windpipe obstructing breathing, intestinal blockages and gastroenterological complications, bacterial infections, intestinal lacerations, and severe rectal bleeding.  These injuries are so severe that they often require immediate and costly veterinarian care or emergency surgeries to attempt to prevent an agonizing death.   In 2012, in response to consumer complaints, the FDA inspected Dynamic's operations and was told by David Frick that Dynamic was considering more warnings and bolder statements on its label or ceasing production of the Real Ham Bone For Dogs.

21.    In 2010, based on the volume of consumer complaints it was receiving, the Missouri Better Business Bureau issued a warning to Defendants about the dangers posed by their Real Ham Bone For Dogs product.  Defendants ignored this notice.  Defendants' response to consumer complaints is dismissive, with David Frick denigrating the reports from consumers as "these people get lathered up and they say stuff."

22.    In 2015, based on the increasing number of consumer complaints, the Missouri Better Business Bureau began pushing for congressional action to

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

remove the Real Ham Bone For Dog from store shelves by sending a letter to every United States senator.

23.    After receiving reports from customers about the dangers of the Real Ham Bone For Dogs, some retailers dropped the product from their inventory and refused to sell them, squarely placing Defendants on notice of the dangers posed by the Real Ham Bone For Dogs.

24.    As the manufacturer and distributor of the Real Ham Bone For Dogs, Defendants nonetheless expressly and impliedly represent that their product is safe and appropriate for dogs.  Further, as the suppliers and manufacturers of Real Ham Bone For Dogs, Defendants are in a superior position to investigate possible risks associated with the Real Ham Bone For Dogs.

25.    Despite having knowledge that Real Ham Bones For Dogs is inherently dangerous for dogs, Defendants represent the opposite.  Defendants advertised the Real Ham Bone For Dogs as a safe product for dogs and failed to warn consumers that the Real Ham Bone For Dogs may cause serious bodily harm or death to their dogs.

26.    None of the instructions on the product's packaging or in other marketing informed Plaintiff or other consumers that allowing dogs to chew on the Real Ham Bone For Dogs as instructed on the labeling would pose a significant risk of serious illness or death.  Nowhere do Defendants state the truth—that the Real Ham Bone For Dogs is a dangerous product that should not be given to dogs.  Instead of properly warning consumers of the true facts and removing it from store shelves, Defendants continue to falsely represent that the Real Ham Bone For Dogs is "safe for your pet," while engaging in a secret warranty program by paying off pet owners who persistently pursued their complaint, offering them refunds or paying their vet bills to keep them quiet. Plaintiff and Class members purchased the Real Ham Bone For Dogs reasonably

Case No.

00119034

believing that the product was safe for its intended purpose.

27.    The dangers presented by the Real Ham Bone For Dogs are material facts.  The defect poses an unreasonable risk of harm to consumers' dogs and Plaintiff would not have purchased the product had she known it was dangerous and could cause serious bodily harm or kill her dog.

28.    Defendants' omissions and misrepresentations were a material factor in influencing Plaintiff's decision to purchase the Real Ham Bone For Dogs and Defendants reaped, and continue to reap, enormous profits from their deceptive marketing and sale of Real Ham Bones For Dogs.

## CLASS DEFINITION AND ALLEGATIONS

29.    Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following class:

> All persons who purchased one or more Real Ham Bone For Dogs other than for purpose of resale.

30.    Excluded from the Class are Defendants, their parents, subsidiaries, affiliates, officers, and directors.

31.    Members of the Class are so numerous and geographically dispersed that joinder of all Class members is impracticable.  Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains many thousands of members.  The precise number of Class members is unknown to Plaintiff.

32.    Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members. The common legal and factual questions include, but are not limited to, the following:

///

///

BLOOD HURST & O'REARDON, LLP

00119034

i.   Whether Defendants' Real Ham Bone For Dogs are unmerchantable because they present a danger and medical hazard when used in accordance with the label instructions;

ii.   Whether Defendants knew or should have known the Real Ham Bone For Dogs cause harm to Class members and their dogs;

iii.   Whether Defendants knew or should have known that the Real Ham Bone For Dogs are inherently dangerous and can cause serious injury in the normal course of use;

iv.   Whether Defendants have a duty to inform Plaintiff and Class members that the Real Ham Bone For Dogs may cause harm to dogs;

v.   Whether Defendants' omissions or representations concerning the safety and appropriate uses of the Real Ham Bone For Dogs are likely to deceive;

vi.   Whether Defendants' alleged conduct violates public policy;

vii.   Whether the alleged conduct constitutes violations of the laws asserted herein;

viii.   Whether Defendants engage in false or deceptive advertising, fraud, and negligent misrepresentations;

ix.   Whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss;

x.   Whether Plaintiff and Class members are entitled to restitution or disgorgement of Defendants' profits; and

xi.   Whether Plaintiff and Class members are entitled to an award of compensatory damages.

33.   The claims asserted by Plaintiff in this action are typical of the claims of the members of the Class, as the claims arise from the same course of conduct by Defendants, and the relief sought is common.

34.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.    Plaintiff retained counsel competent and experienced in both consumer protection and class litigation.

35.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.    The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually.    It would thus be virtually impossible for purchasers, on an individual basis, to obtain effective redress for the wrongs done.    Furthermore, even if Class members could afford such individualized litigation, the court system could not.    Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.    Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.    By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

36.    Unless a class is certified, Defendants will retain monies that were taken from Plaintiff and Class members as a result of Defendants' wrongful conduct.

## COUNT I

### Fraud

### On Behalf of Plaintiff and All Class Members

37.    Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

38.    Defendants have known for many years that the Real Ham Bone For Dogs was dangerous for dogs because it posed a significant risk of severe or deadly injury to dogs.    Defendants had actual knowledge of these risks at the

BLOOD HURST & O'REARDON, LLP

Case No.

00119034

time of sale to Plaintiff and members of the Class.

39.    As such, Defendants were under a duty and failed to discharge their duty to exercise reasonable care to not make misrepresentations about the product, including that this product was appropriate and safe for dogs.  They also had a duty to disclose to Plaintiff and members of the Class the true facts about Real Ham Bone for Dogs.  As the manufacturer, marketer, and distributor of the Real Ham Bone For Dogs, Defendants had special knowledge of the hazards associated with the Real Ham Bone For Dogs, which was not reasonably available to Plaintiff and members of the Class.  Defendants made affirmative representations in violation of the applicable laws and actively concealed material facts relating to the dangerous nature of the Real Ham Bone For Dogs, knowing that Plaintiff and Class members would rely on the presumption that no such facts exist.

40.    By purchasing a product that was not as represented, Plaintiff and members of the Class did in fact rely upon Defendants' representations, including the product's packaging, at the time they purchased the Real Ham Bone For Dogs.  Plaintiff and members of the Class justifiably relied on these representations to their detriment and/or were induced by Defendants' false statements and active concealment over the safety of the Real Ham Bone For Dogs, in part, because at no time did Plaintiff and members of the Class have the knowledge or expertise necessary to independently evaluate the safety of the product.

41.    Plaintiff and members of the Class could not have discovered Defendants' fraudulent and misleading conduct at an earlier date through the exercise of reasonable diligence because Defendants actively concealed their deceptive, misleading, and unlawful activities.

BLOOD HURST & O'REARDON, LLP

Case No.
CLASS ACTION COMPLAINT
00119034

42.    Defendants' misrepresentations, concealment, suppression, and omissions were made in order to induce Plaintiff and members of the Class to purchase the Real Ham Bone For Dogs.  Plaintiff and members of the Class did just that and reasonably and justifiably relied upon the material misrepresentations and omissions made by Defendants when agreeing to purchase the product and permitting their dogs to chew on it.

43.    As a direct and proximate result of Defendants' false representations of material facts regarding the safety and efficacy of the Real Ham Bone For Dogs, dogs belonging to Plaintiff and members of the Class sustained severe and debilitating injuries, and many died.  Plaintiff and members of the Class have suffered additional damages including, but not limited to, costs of medical care, rehabilitation, mental anguish and pain and suffering, for which they are entitled to compensatory damages.

44.    At all times relevant hereto, Defendants actually knew of the defective nature of the products as herein set forth and continued to manufacture, market, and sell the products so as to maximize sales and profits at the expense of public health and safety, including the health and safety of dogs.  Defendants' conduct exhibits a wanton or reckless disregard and a want of care as to establish that their actions were a result of fraud, evil motive, actual malice, and the conscious and deliberate disregard of foreseeable harm to Plaintiff and members of the Class, as well as their dogs.  Therefore, Plaintiff and the Class are entitled to punitive damages.

## COUNT II

### Negligent Misrepresentation

### On Behalf of Plaintiff and All Class Members

45.    Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

BLOOD HURST & O'REARDON, LLP

00119034

Case No.
CLASS ACTION COMPLAINT

46.     Defendants owed Plaintiff and members of the Class a duty to exercise reasonable care in representing that the Real Ham Bone For Dogs was safe and appropriate for dogs.

47.     Defendants knew or should have known for many years that the Real Ham Bone For Dogs posed a serious risk of injury or death to dogs. Despite this knowledge, Defendants misrepresented that the Real Ham Bone For Dogs was safe and appropriate for dogs.

48.     Defendants had superior knowledge and information regarding the risks associated with the Real Ham Bone For Dogs.  Plaintiff and members of the Class did not have access to this information.

49.     Defendants' misrepresentations concern issues material to the transaction in question.  Defendants intended for Plaintiff and members of the Class to rely on their representations that the Real Ham Bone For Dogs was safe for use.  Had Plaintiff and members of the Class known that use of the Real Ham Bone For Dogs could result in serious injury or death to their dogs, they would not have purchased the product.

50.     The foregoing misrepresentations and practices proximately caused Plaintiff and members of the Class to suffer damages in that they purchased the Real Ham Bone For Dogs without knowing that the alleged misrepresentations and about the product were false.

51.     As a proximate cause of Defendants' false representations, Plaintiff and members of the Class suffered loss of money and injury to property, including in the illness and deaths of their pets and associated expenses, and continue to suffer damages.  Plaintiff seeks compensatory damages in an amount to be proven at trial.

///

///

///

BLOOD HURST & O'REARDON, LLP

00119034

BLOOD HURST & O'REARDON, LLP

## COUNT III

### Violation of the Missouri Merchandising Practices Act

### Missouri Revised Statute §§407.101, *et seq.*

### On Behalf of Plaintiff and a Sub-Class of Missouri Purchasers

52.     Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

53.     This cause of action is brought pursuant to the Missouri Merchandising Practices Act, Mo. Rev. Stat. §§407.101, *et seq.* (the "Missouri MPA"), on behalf of Plaintiff and the Class.  The Missouri MPA makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . in or from the state of Missouri."  Mo. Rev. Stat. §407.020(1).

54.     Dynamic, Frick's, Plaintiff, and members of the Class are "persons" as defined by Mo. Rev. Stat. §407.010(5).

55.     The Real Ham Bone For Dogs is "merchandise" within the meaning of the Missouri MPA, and the "sale" of the merchandise by Defendants demonstrates they were engaged in and committed the unlawful acts alleged herein in the course of "trade" or "commerce" within the meaning of the Missouri MPA.  Mo. Rev. Stat. §407.010(4), (6), and (7).

56.     Plaintiff and the members of the Class purchased the Real Ham Bone For Dogs for personal, family, or household use.

57.     Defendants violated the Missouri MPA by engaging in deception, fraud, false pretense, false promise, misrepresentation, unfair practice, and the concealment, suppression, or omission of any material fact in connection with the sale and advertisement of the Real Ham Bone For Dogs in trade or commerce by, *inter alia*, deceptive and misleading advertising and failing to warn

00119034

Case No.

CLASS ACTION COMPLAINT

consumers and omitting material facts from its labeling, advertising, and marketing materials.

58.    Defendants knew or should have known of the falsity of their representations and of the materiality of the omissions at all material times. Defendants knew or should have known that their conduct violated the Missouri MPA. Defendants' unlawful acts and practices complained of herein affect the public interest.

59.    Defendants' unfair or deceptive acts or practices, including the concealment, omission, and suppression of material facts regarding the Real Ham Bone For Dogs, were directed at consumers and had a tendency or capacity to mislead and create a false impression in consumers in violation of the Missouri MPA.

60.    As a direct and proximate result of Defendants' violations of the Missouri MPA, Plaintiff and the Class suffered injury-in-fact and incurred actual damages from an ascertainable loss of money and property, including the cost of purchasing the Real Ham Bone For Dogs.

61.    Pursuant to Mo. Rev. Stat. §407.025(1) and (2), Plaintiff, on behalf of herself and members of the Class, seeks an order for the following: actual damages; punitive damages; any equitable relief the Court deems necessary or proper, such as restitution and disgorgement; and an award of reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment:

A.    Certifying the Class as requested herein;

B.    Awarding Plaintiff and members of the proposed Class damages, including punitive damages;

C.    Awarding restitution and disgorgement of Defendants' revenues to Plaintiff and the proposed Class members;

BLOOD HURST & O'REARDON, LLP

00119034

D.    Awarding attorneys' fees and costs; and

E.    Providing such further relief as may be just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 31, 2017

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
LESLIE E. HURST (178432)
THOMAS J. O'REARDON II (247952)

By:      *s/ Timothy G. Blood*
TIMOTHY G. BLOOD

701 B Street, Suite 1700
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com
toreardon@bholaw.com

*Attorneys for Plaintiff and the Proposed Class*

20

Case No.

CLASS ACTION COMPLAINT

00119034